# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 19-1108V
UNPUBLISHED

| | |
|---|---|
| SCOTT REYNOLDS,<br><br>                    Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                    Respondent. | Chief Special Master Corcoran<br><br>Filed: July 29, 2021<br><br>Special Processing Unit (SPU);<br>Decision Awarding Damages; Pain<br>and Suffering; Influenza (Flu);<br>Shoulder Injury Related to Vaccine<br>Administration (SIRVA). |

*David John Carney*, Green & Schafle LLC, Philadelphia, PA, for Petitioner.

*Althea Walker Davis*, U.S. Department of Justice, Washington, DC, for Respondent.

## DECISION AWARDING DAMAGES[1]

On July 30, 2019, Scott Reynolds filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that he suffered a shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine administered on December 11, 2018. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU").

---

[1] Because this Decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). This means the opinion will be available to anyone with access to the internet. In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons set forth below, I find that Petitioner is entitled to an award of damages in the amounts of **$125,000.00 in past/actual pain and suffering, as well as $4,241.94 for past unreimbursed expenses.**

I.  **Relevant Procedural History**

As noted above, Petitioner initiated his claim in July 2019. He also filed supporting documentation as Exs. 1-10. On January 4, 2021, Respondent filed his report pursuant to Vaccine Rule 4(c) conceding that Petitioner was entitled to compensation for his Table flu/SIRVA claim. ECF No. 25. Therefore, on January 8, 2021, I issued a Ruling on Entitlement for that injury, and directed the parties to work collaboratively towards resolving damages. ECF Nos. 26-27.

On January 18, 2021, Petitioner advised that he had conveyed his initial demand prior to Respondent's concession of entitlement, but that subsequent discussions had reached an impasse, particularly concerning Petitioner's pain and suffering. ECF No. 28. On March 24, 2021, Petitioner filed a Motion for Ruling on the Record with respect to damages. Petitioner claimed $145,000.00 for past and future pain and suffering; $4,241.94[3] in past unreimbursed expenses; and $3,213.60 in past lost wages arising from his use of twelve (12) days of sick leave for treatment related to his SIRVA. ECF No. 34. Petitioner also filed updated medical records and supporting documentation for his demand. Exs. 11-16.

On May 10, 2021, Respondent countered that an appropriate award for past pain and suffering would be the lesser sum of $85,000.00. ECF No. 36 at 17. Respondent agreed on the requested past unreimbursed expenses, but opposed any award for past lost earnings on the grounds that Petitioner had not established that he would have been offered a cash award for the sick leave he would not have used but for the vaccine injury. *Id.* at 17-18. On May 12, 2021, Petitioner filed a reply, ECF No. 37, and additional documentation relating to his employer's leave policy. Pet. Ex. 17. This matter is now ripe for adjudication.[4]

---

[3] Petitioner inadvertently provided the wrong figure in his motion. Petitioner confirmed in his reply brief that he was seeking and that the parties indeed agreed to a lump sum of $4,241.94 for past unreimbursed expenses. *See* Reply (ECF No. 37) at 8.

[4] On July 12, 2021, a supervisory staff attorney emailed Petitioner's counsel about potentially submitting this matter for my next Motions Day. Petitioner's counsel had a scheduling conflict but he was amenable to resolution without oral argument as the damages issues were already fully briefed.

2

## II.  Legal Standard

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Human Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no mathematic formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Human Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("[a]wards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Human Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Human Servs.*, No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

I may also consider prior pain and suffering awards to aid my resolution of the appropriate amount of compensation for pain and suffering in this case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Human Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, I may rely on my own experience (along with my predecessor Chief Special Masters) adjudicating similar claims.[5] *Hodges v. Sec'y of Health & Human Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993).

---

[5] From July 2014 until September 2015, the SPU was overseen by former Chief Special Master Vowell. For the next four years, until September 30, 2019, all SPU cases, including the majority of SIRVA claims, were assigned to former Chief Special Master Dorsey, now Special Master Dorsey. In early October 2019, the majority of SPU cases were reassigned to me as the current Chief Special Master.

3

Although pain and suffering in the past was often determined based on a continuum, as Respondent argues, that practice was cast into doubt by the Court several years ago. In *Graves*, Judge Merow rejected a special master's approach of awarding compensation for pain and suffering based on a spectrum from $0.00 to the statutory $250,000.00 cap. *Graves v. Sec'y of Health & Human Servs.*, 109 Fed. Cl. 579 (2013). Judge Merow maintained that do so resulted in "the forcing of all suffering awards into a global comparative scale in which the individual petitioner's suffering is compared to the most extreme cases and reduced accordingly." *Id.* at 590. Instead, Judge Merow assessed pain and suffering by looking to the record evidence, prior pain and suffering awards within the Vaccine Program, and a survey of similar injury claims outside of the Vaccine Program. *Id.* at 595. Under this alternative approach, the statutory cap merely cuts off *higher* pain and suffering awards – it does not shrink the magnitude of *all* possible awards as falling within a spectrum that ends at the cap.

I have periodically provided statistical data on pain and suffering for SIRVA claims resolved in SPU. *See e.g.*, *Accetta v. Sec'y of Health & Human Servs.*, 2021 WL 1718202, at *2 (Fed. Cl. Spec. Mstr. March 31, 2021) (providing that as of January 1, 2021, in 47 SPU SIRVA cases that required a reasoned damages decision, compensation for a petitioner's actual or past pain and suffering ranged from $40,000.00 to $185,000.00).

### III. Pain and Suffering

In this case, Petitioner's awareness of the injury is not disputed, which leaves only the severity and duration of the injury to be considered. In assessing those factors, I have reviewed the record as a whole, including the medical records, affidavits, and all assertions made by the parties in written documents. I considered prior awards for pain and suffering in both SPU and non-SPU SIRVA cases and rely upon my experience adjudicating these cases. However, I ultimately base my determination on the specific circumstances of this case.

Petitioner experienced the onset of constant aching and sharp pain in his right shoulder within 48 hours of his December 11, 2018 flu vaccine, for which he sought the attention of his primary care provider fifteen (15) days later on December 26, 2018. Ex. 2 at 8-12. Petitioner promptly sought out rather significant treatment for his shoulder

including oral steroids,[6] two courses of physical therapy,[7] an MRI scan,[8] two steroid injections,[9] and arthroscopic surgery.[10]

The medical records establish that Petitioner suffered a moderately severe injury as measured by both the documented degree and persistence of pain. At the first medical encounter two weeks post-vaccination, Petitioner reported that his shoulder pain was constant, sharp, and worse with motion. Ex. 2 at 8-12. Ibuprofen, oral steroids, and steroid injections did not deliver significant relief. During the first few months, Petitioner assessed his pain at 4-6/10 and worsening with movement. Ex. 4 at 4-5; Ex. 5 at 7. Petitioner reported that after Dr. Linehan's arthroscopic surgery on May 29, 2019, his pain was initially increased to 6/10 but then decreased to 3-4/10.  Ex. 9 at 10-11; Ex. 7 at 45-46.

Six weeks post-surgery, on June 28, 2019, Dr. Linehan recorded that Petitioner still had "achy" pain rated at 4/10 which increased with movement and sleeping. Ex. 9 at 6. He was still taking Tylenol and Mobic for pain relief.  *Id.*  Dr. Linehan assessed that while Petitioner could participate in activities as tolerated, he "should avoid activities that irritate the shoulder excessively." *Id.* at 10; *see also* Ex. 9 at 10-11 (August 15, 2019, follow-up with physician assistant who prescribed a return to formal physical therapy); Ex. 7 (physical therapy sessions from August 26 – September 26, 2019).

Respondent noted that four months after surgery, on October 30, 2019, Petitioner followed up at the orthopedic practice and was told that he could resume his hobby of weightlifting. However, this encounter was not with Dr. Linehan, but with her physician assistant, and even the PA noted that Petitioner should avoid overhead press-type movements (which had caused increased pain throughout the course of Petitioner's

---

[6] At the first post-vaccination appointment with his primary care provider, Petitioner received prescriptions for methylprednisolone and naproxen.  Ex. 2 at 8-12.

[7] Petitioner completed four physical therapy sessions between January 29 – February 28, 2019, before receiving an orthopedist's interpretation of an MRI of his shoulder and the potential for surgical intervention. Ex. 4. After Petitioner underwent arthroscopic surgery and he continued to have considerable pain, he returned for an additional eight physical therapy sessions between August 26 – September 26, 2019. Ex. 7.

[8] The February 12, 2019, MRI showed tendinosis of the supraspinatus tendon, mild osteoarthritis of the AC joint, subcortical cystic changes in the greater tuberosity "possibly secondary to chronic tendinosis," and signal abnormality in the superior glenoid labrum that possibly represented degeneration or a tear. Pet. Ex. 10 at 31-32.

[9] An orthopedic physician assistant administered the first steroid injection on March 7, 2019, and the second injection on December 18, 2020, several months after arthroscopic surgery. Ex. 5 at 7; Ex. 16 at 13.

[10] On May 29, 2019, orthopedic surgeon Dr. Colleen Linehan performed a right shoulder arthroscopy with acromioclavicular excision and acromioplasty.  Ex. 6 at 8-9.

shoulder injury). Pet. Ex. 9 at 23. Additionally, six months post-surgery, on November 27, 2019, Dr. Linehan wrote a letter in support of Petitioner's vaccine injury claim. Ex. 8.[11] She was "not sure of the potential future medical treatment or additional surgeries that would be needed." *Id.* While Petitioner was doing better compared to when he established care, he was still experiencing shoulder pain as a result of the flu vaccination. *Id.* He had limitations with lifting his arm away from the body and overhead. *Id.* He also risked exacerbation or repeat irritation[12] of the rotator cuff causing further tendinitis. *Id.* These symptoms were likely permanent in nature. *Id.*

There are no further records pertaining to Petitioner's left shoulder for more than a year later, until December 18, 2020, when he presented first to his primary care provider for reaggravation of shoulder pain in association with moving boxes. Ex. 16 at 10-14. Respondent emphasized the primary care provider's notations that Petitioner had "generally good range of motion," he "really ha[d] not taken anything" for the shoulder pain, and that Petitioner was only given methylprednisolone and told to rest the shoulder. Resp. Response at 15-16. However, this encounter does not contradict Dr. Linehan's earlier statements that Petitioner had a permanent shoulder injury which could be aggravated by excessive activity and that no particular treatment was indicated.

Overall, the medical records support a finding that the majority of Petitioner's active treatment as well as the most severe pain occurred within the first year, after which he reached maximum medical improvement. He continues to suffer some degree of pain, which he manages without prescription medication and just by avoiding use and movement of the shoulder. Those records are supplemented by Petitioner's affidavits detailing his continued shoulder pain which disrupts his sleep, many activities of daily living, relationships with his wife and children, and his career as an intermediate school superintendent. Petitioner also explains that he has *discontinued* many hobbies and recreational activities in an effort to avoid further injuring his shoulder. *See generally* Exs. 3, 15. Petitioner also noted that the injury is in his dominant arm. Ex. 3 at ¶ 22.

Petitioner argues that based on prior reasoned opinions, awards for past pain and suffering for SIRVA resulting in surgical intervention have ranged from $110,000.00 - $200,000.00. Pet. Brief at 11-15 (internal citations omitted). He placed his own case towards the middle to low end of this range, at $145,000.00. *Id.* at 15-16.

---

[11] Somewhat surprisingly, neither party cited Dr. Linehan's letter in their damages briefs. I find that it is more supportive of Petitioner's position.

[12] Dr. Linehan's letter states "irrigation." I assume that this was inadvertent and that she meant irritation.

In contrast, Respondent maintains that special masters' reasoned opinions are becoming less and less useful because the majority of SIRVA cases are instead proffered by Respondent "at their full value." Resp. Response at n. 5. I have previously rejected this argument, noting that proffers do not establish adjudicated determinations of damages, but instead reflect only *Respondent's* view (regardless of whether the proffer is accepted by the petitioner later, in the interests of settling). *See, e.g.*, *Hayes v. Sec'y of Health & Human Servs.*, No. 17-804V, 2021 WL 688628, at n. 7 (Fed. Cl. Spec. Mstr. Jan. 6, 2021). There is also potential that if a petitioner does not accept the initial valuation of his or her claim, the petitioner will submit additional evidence – such as the second more detailed affidavit here, which can persuade either Respondent or the Court to award a higher figure. I find it appropriate to do so here. Respondent otherwise offers no reasoned decisions supporting his damages calculation.

I find that Petitioner's case is somewhat comparable to one of the cases he cited, in which the claimant experienced severe pain for five months leading up to surgery, but then saw significant improvement. *Collado v. Sec'y of Health & Human Servs.*, No. 17-225V, 2018 WL 3433352 (Fed. Cl. June 6, 2018) (awarding $120,000.00 for past pain and suffering). The impacts on Petitioner's daily life are also somewhat similar to those in *Dobbins v. Sec'y of Health & Human Servs.*, No. 16-0854V, 2018 WL 4611267 (Fed. Cl. Aug. 15, 2018) (awarding $125,000.00 for past pain and suffering).[13] **Accordingly, in the present case, I find that an appropriate award for past pain and suffering is $125,000.00.**

## IV.  Past Lost Wages

Petitioner requested $3,213.60 in past lost wages, representing reimbursement for twelve (12) days of sick leave relating to treatment of his shoulder injury during 2019, *see* Ex. 13. Petitioner reasoned that under his employer's policy, "sick days have monetary value if they remain unused and then they can be cashed out by the employee after they accrued six consecutive years of employment." Pet. Reply at 8. A sick day's monetary value is one-half of the employee's daily rate, which in Petitioner's case for the applicable year is $267.80 (half of $535.60). *Id.*; *see also* Exs. 14, 15.

---

[13] Respondent notes that Ms. Dobbins participated in a greater number of physical therapy sessions – over forty (40). Resp. Response at 14-15. Here, Petitioner's physical therapy was paused for several months while Dr. Linehan reviewed the shoulder MRI, scheduled and performed a surgery, and evaluated Petitioner's subsequent recovery.

At Respondent's request (*see* Resp. Response at 17-18), Petitioner filed evidence to support that he was hired on October 15, 2014, and that he remains employed with that entity. Ex. 17.[14] Therefore, he accrued six consecutive years of employment on October 15, 2020. The employer's policy would not seem to apply monetary value to sick days accrued before that date. The policy reads: "*For each year after the sixth year*, the staff member shall be eligible for an amount equal to one half of their daily rate of pay times the number of unused sick days *for that year*." Ex. 14 at 2 (emphasis added). Therefore, past lost wages for the sick leave taken in 2019, before Petitioner's sixth year of employment beginning on October 15, 2020, are not compensable, and I deny this damages component.

## V.   Conclusion

**For the foregoing reasons, I award Petitioner $125,000.00 in past pain and suffering, as well as $4,241.94 for past unreimbursed expenses.** This award represents compensation for all damages that would be available under Section 15(a). The clerk of the court is directed to enter judgment in accordance with this decision.[15]

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

---

[14] Respondent only requested evidence that Petitioner would have been eligible to cash out the sick days in question; Respondent did not assert that Petitioner might have used those sick days for reasons other than the vaccine injury and therefore their monetary value was uncertain. *Compare to Gross v. Sec'y of Health & Human Servs.*, No. 19-835V, slip op., 2021 WL 2409997, at *3 (Fed. Cl. May 28, 2021) (denying respondent's motion for review of my determination that "petitioner would likely have been reimbursed for unused PTO [paid time off] by her employer").

[15] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.